UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ESTEBAN MARQUEZ,

                Plaintiff,

        -against-

INDIAN TAJ, INC. d/b/a SANTOOR
INDIAN RESTAURANT, BALVINDER
SINGH, HARMINDER SINGH,
JOGINDER SINGH, KIRPAL SINGH, and
MEHANGA SINGH,

                Defendants.
--------------------------------------------------------X

REPORT AND
RECOMMENDATION
20 CV 5855 (DG)(RML)

LEVY, United States Magistrate Judge:

        By order dated November 24, 2021, the Honorable Diane Gujarati, United States

District Judge, referred plaintiff's motion for default judgment to me for report and

recommendation.  For the reasons stated below, I respectfully recommend that plaintiff's motion

be granted and that plaintiff be awarded $306,889.26 in damages, plus pre-judgment interest,

post-judgment interest, and $14,547.50 in attorney's fees and costs.

## BACKGROUND AND FACTS

        Plaintiff Esteban Marquez ("Marquez" or "plaintiff") commenced this wage and

hour action on December 3, 2020, against defendants Indian Taj, Inc. d/b/a Santoor Indian

Restaurant (the "corporate defendant" or the "Restaurant") and Balvinder Singh asserting claims

under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the New York

Labor Law ("NYLL").  (Complaint, dated Sept. 24, 2020 ("Compl."), Dkt. No. 1.)  On April 8,

2021, plaintiff filed an amended complaint to add defendants Joginder Singh, Harminder Singh,

Kirpal Singh, and Mehanga Singh (together with Balvinder Singh, the "individual defendants").

(Amended Complaint, dated Apr. 8, 2021 ("Am. Compl."), Dkt. No. 7.)  The individual

defendants are alleged to be shareholders of the Restaurant, a domestic corporation with a

principal place of business at 257-05 Union Turnpike in Glen Oaks, New York. (Id. ¶¶ 5-7, 11,

15, 19, 23.)  Defendants allegedly employed plaintiff as a cook and salad preparer from 2005

until June 10, 2018.  (Id. ¶¶ 27-32, 40, 44.)

All defendants were properly served with the summons and amended complaint.

(See Affidavit of Service of David Tatum, sworn to May 17, 2021, Dkt. No. 9; Affidavits of

Service of Husam Al-Atrash, sworn to May 21, 2021, Dkt. Nos. 10-14.)  Defendants have failed

to answer or otherwise move with respect to the complaint.

Plaintiff moved for entry of default pursuant to Federal Rule of Civil Procedure

55(a) as to all defendants on July 7, 2021.  (See Request for Certificate of Default, filed July 7,

2021, Dkt. No. 15.)  On July 9, 2021, the Clerk of the Court noted the defaults of the Restaurant

as well as the individual defendants.  (See Clerk's Entry of Default, dated July 9, 2021, Dkt. No.

16.)  On November 19, 2021, plaintiff moved for default judgment.  (See Motion for Default

Judgment, dated Nov. 19, 2021, Dkt. No. 20.)  Judge Gujarati referred plaintiff's motion to me

on November 24, 2021.  (See Order Referring Motion, dated Nov. 24, 2021.)

Plaintiff seeks a default judgment on claims under the FLSA and NYLL for

defendants' failure to (1) pay him overtime compensation, (2) pay him spread of hours wages,

and (3) provide proper wage statements.  (Am. Compl. ¶¶ 105, 53-56, 60-63, 66-68, 70-72; see

also Memorandum of Law in Support of Plaintiff's Motion for Default Judgment, dated Nov. 19,

2021 ("Pl.'s Mem."), Dkt. No. 18-1.)  Plaintiff requests an award of overtime wages, spread of

hours wages, liquidated damages, statutory damages, pre-judgment interest, and attorney's fees

and costs.  (Pl.'s Mem. at 2.)

## DISCUSSION

The Federal Rules of Civil Procedure prescribe a two-step process for a plaintiff to obtain a default judgment.  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default," as it has done here.  FED. R. CIV. P. 55(a).  Second, after a default has been entered against the defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the court may, on a plaintiff's motion, enter a default judgment.  FED. R. CIV. P. 55(b)(2).  In order to grant a default judgment, the court must ensure that the plaintiff took all of the required steps in moving for default judgment, including providing proper notice to defendants of the lawsuit.  Here, as explained, plaintiff has demonstrated that he properly served defendants with the summons and complaint.  Plaintiff has also demonstrated that he served the Motion for Default Judgment and accompanying submissions on defendants in compliance with Local Rule 55.2(c).  (See Declaration of Service of Steven J. Moser, Esq., dated Nov. 19, 2021, Dkt. No. 20.)

A.  Liability

An entry of default alone is insufficient to establish liability, "since a party in default does not admit mere conclusions of law."  Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Philip Gen. Constr., No. 05 CV 1665, 2007 WL 3124612, at *3 (E.D.N.Y. Oct. 23, 2007) (citation omitted).  A defendant's "default is deemed to constitute a concession of all well pleaded allegations of liability."  Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).  Where a plaintiff moves for default judgment, the court "is required to accept all of [the plaintiff's] factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor."  Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009)

3

(citing <u>Au Bon Pain Corp. v. Artect, Inc.</u>, 653 F.2d 61, 65 (2d Cir. 1981)).  The court must also

"determine whether [plaintiff's] allegations establish [defendants'] liability as a matter of law."

<u>Id.</u>

   Plaintiff has sufficiently pleaded factual allegations that give rise to liability for

unpaid overtime wages under the FLSA and NYLL (Am. Compl. ¶¶ 27-43, 45-48, 53-58, 60-64),

unpaid spread of hours wages under the NYLL (<u>id.</u> ¶¶ 41-43, 50-51, 66-69), and failure to

provide proper wage statements under the NYLL (<u>id.</u> ¶¶ 49, 71-72).  The extent to which

plaintiff can recover damages for these violations initially depends on whether: (1) his claims

were timely; (2) he is a covered employee under the FLSA and the NYLL; and (3) defendants

were plaintiff's employers under the FLSA and NYLL.

   1. <u>Timeliness</u>

   For claims to be timely under the FLSA, they must have arisen within the two

years prior to filing of the complaint, or—for willful violations—within the three years prior.  29

U.S.C. § 255(a).  Here, the complaint, which was filed on December 3, 2020, alleges willful

violations of the FLSA. (<u>See</u> Compl.; Am. Compl. ¶¶ 57, 64, 69.)  Therefore, the FLSA's three-

year statute of limitations applies.  Because plaintiff alleges that he was not properly paid wages

before June 10, 2018, I find that his claims are timely under the FLSA.  (Am. Compl. ¶¶ 40-48.)

However, the portions of plaintiff's claims that occurred prior to December 3, 2017, <u>see</u> id. ¶¶

40, 43, 46-48, are not timely under the FLSA.  Plaintiff may only recover for the federal

violations that occurred on or after December 3, 2017.

   For plaintiff's claims to be timely under the NYLL, they must have arisen within

the six years prior to the filing of the complaint.  <u>See</u> N.Y. Lab. Law §§ 198(3), 663(3).  Plaintiff

argues that Governor Como's Executive Order No. 202.8[1] tolled the statute of limitations for 228

days from March 20, 2020 until November 3, 2021.  (Pl.'s Mem. at 6.)  Plaintiff contends that he

may therefore recover an additional 228 days under the NYLL for the period from April 19, 2014

until his separation from employment.  (Id.)  In support of his argument, plaintiff cites to a

Second Department opinion that considered Executive Order No. 202.8 and noted "[a] toll

suspends the running of the applicable period of limitation for a finite time period, and the period

of the toll is excluded from the calculation of the relevant time period."  (Id. (quoting Brash v.

Richards, 149 N.Y.S.3d 560 (N.Y. App. Div. 2d Dept. 2021)).)  Courts in this Circuit have found

that Executive Order 202.8 applies to federal cases involving New York state-law statutes of

limitations.  See, e.g., Bowers v. City of Salamanca, No. 20 CV 1206, 2021 WL 2917672, at *6

(W.D.N.Y. July 12, 2021) (finding Executive Order 202.8 applicable to section 1983 cases

brought in federal court); Bonilla v. City of New York, No. 20 CV 1704, 2020 WL 6686531

(E.D.N.Y. Oct. 3, 2020), aff'd, 2020 WL 6637214 (E.D.N.Y. Nov. 12, 2020) (same); Citi

Connect, LLC v. Local Union No. 3, No. 20 CV 5147, 2020 WL 5940143, at *3-4 (S.D.N.Y.

Oct. 7, 2020) (holding that Executive Order 202.8 tolled the statute of limitations in a claim

brought under the False Claims Act).  Accordingly, I find that plaintiff may recover under the

NYLL for claims that occurred on or after April 19, 2014.

---

[1] On March 20, 2020, Governor Cuomo issued Executive Order 202.8, 9 N.Y.C.R.R. § 8.202.8, which declared a state of emergency due to the COVID-19 pandemic and "among other things, toll[ed] the time limits for filing legal actions as prescribed by the state's procedural laws." Bonilla v. City of New York, No. 20 CV 1704, 2020 WL 6637214, at *1 (E.D.N.Y. Nov. 12, 2020).  The Governor subsequently issued a series of nine Executive Orders extending this toll. See 9 N.Y.C.R.R. §§ 8.202.14, 8.202.28, 8.202.38, 8.202.48, 8.202.55, 8.202.55.1, 8.202.60, 8.202.63, 8.202.67.  On October 4, 2020, the Governor issued Executive Order 8.202.67, which was the last extension of the toll to November 3, 2020.  See 9 N.Y.C.R.R. § 8.202.67.

2.    Employee Coverage

Since the provisions of the FLSA and NYLL apply only to employees of covered employers, a plaintiff in a wage and hour action must show that he or she was defendants' employee, and that defendants were employers subject to the coverage of each statute.  For purposes of the FLSA, an employee is "any individual employed by an employer," meaning any individual whom an employer "suffer[s] or permit[s] to work."  29 U.S.C. §§ 203(e)(1); (g).  Absent a statutory exemption, such individuals are protected by the FLSA, so long as they work for a covered employer.  An employer is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." [2]  29 U.S.C. § 203(d).  Person is defined as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons."  29 U.S.C. § 203(a).  In addition, for employees to be covered by the FLSA, they must show either that their employer was an enterprise engaged in interstate commerce or that their work as employees regularly involved them in interstate commerce.  See 29 U.S.C. § 203(s)(1).

Plaintiff has adequately pleaded that he was an employee to whom no statutory exemption applies, insofar as he alleges that he was hired as a cook and salad preparer at the Restaurant and he worked for defendants from approximately 2005 until June 10, 2018.  (Am. Compl. ¶¶ 39-40; 44; see also Declaration of Esteban Marquez, dated Nov. 19, 2021 ("Marquez Decl."), Dkt. No. 18-2, ¶¶ 2, 5.)  In addition, plaintiff alleges that the corporate defendant had a gross volume of sales greater than $500,000 per year during the relevant period, and that the

---

[2] "Courts have interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA."  Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 308 n.21 (S.D.N.Y. 2011); see also Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015); Oaxaca v. Hudson Side Cafe Inc., No. 13 CV 2698, 2018 WL 4859152, at *8 (E.D.N.Y. Oct. 8, 2018).

Restaurant was engaged in commerce as defined by the FSLA.  (Am. Compl. ¶¶ 33-36.)  Thus,

plaintiff alleges that he is a covered employee under the FLSA. This allegation is, on its face,

conclusory, insofar as it restates the statutory definition of enterprise coverage without providing

additional facts.  The only supporting factual allegation is that the corporate defendant "operated

an eating or drinking place that prepared and offered food or beverages for human consumption

on its premises."  (Am. Compl. ¶ 37.)  However, multiple courts in this district have held that

similarly conclusory allegations of enterprise coverage may be accepted on a motion for default

judgment where it may be inferred from the type of business enterprise that it was engaged in

interstate commerce.  See, e.g., Newman v. W. Bar & Lounge, Inc., No. 20 CV 1141, 2021 WL

2401176, at *5 (E.D.N.Y. June 11, 2021) ("[T]he court can reasonably infer that at least some

materials handled by the plaintiff-employee have moved or engaged in interstate or international

commerce, such as the food, beverages, products, materials, and equipment utilized by the

defendants."); Acosta v. DRF Hosp. Mgmt. LLC, No. 18 CV 346, 2019 WL 1590931, at *9

(E.D.N.Y. Mar. 13, 2019) (finding that an allegation that a restaurant "had employees engaged in

commerce or in the production of goods for commerce and had annual gross revenues of at least

$500,000" is sufficient to satisfy the interstate commerce requirement), report and

recommendation adopted, 2019 WL 1585225 (E.D.N.Y. Apr. 12, 2019); Fermin v. Las Delicias

Peruanas Rest., Inc., 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015) ("[I]t is reasonable to infer that the

myriad goods necessary to operate a Peruvian restaurant with an eat-in dining area and over

$500,000.00 in annual sales do not exclusively come from New York State. . . . Las Delicias

requires a wide variety of materials to operate, for example, foodstuffs, kitchen utensils, cooking

vessels, cleaning supplies, paper products, furniture, and more. It is also reasonable to infer that

some of these materials moved or were produced in interstate commerce.").  I agree with those

7

courts that have adopted this approach, and therefore find that plaintiff has established that he is a

covered employee under the FLSA and the NYLL.

        3.   <u>Employer Status of Individual and Corporate Defendants</u>

        Marquez seeks to hold six defendants—one corporation and five individuals—

liable for his unpaid wages.  (Am. Compl. ¶¶ 5-26; Pl.'s Mem. at 3-4.)  In order to be hold the

individual defendants liable under the FLSA and NYLL, plaintiff must allege that the individual

defendants were his "employers" within the broad meaning of 29 U.S.C. § 203(d).  <u>See</u> <u>Fermin</u>,

93 F. Supp. 3d at 35-37.  The Second Circuit has set forth a series of non-exclusive factors for

evaluating the "economic reality" of a given relationship to determine whether an employment

relationship exists.  <u>See</u> <u>Carter v. Dutchess Community College</u>, 738 F.2d 8, 12 (2d Cir. 1984).

These factors include whether the alleged employer: (1) had the power to hire and fire the

employee; (2) supervised and controlled employee work schedules or conditions of employment;

(3) determined the rate and method of payment; and (4) maintained employment records.  <u>Id.</u>;

<u>see also</u> <u>Herman v. RSR Sec. Servs. Ltd.</u>, 172 F.3d 132, 139 (2d Cir. 1999).  Here, plaintiff

alleges that all of the individual defendants "had the power to hire and fire [him], supervised, and

controlled the work schedules and conditions of [his] employment, determined the rate and

method of his pay, and maintained records of his employment."  (Am. Compl. ¶¶ 9, 13, 17, 21,

25.)  Plaintiff also avers that the individual defendants were "[t]he owners and managers of the

Restaurant," had "the power to direct, discipline and/or fire" him, and "in fact gave [him]

directions when [he] worked."  (Marquez Decl. ¶¶ 16-18.)  Thus, plaintiff has alleged all four of

the <u>Carter</u> factors and I therefore find that the individual defendants were plaintiff's employers.

        In order to establish the corporate defendant's liability under the FLSA, plaintiff

must allege that the Restaurant was an "enterprise engaged in commerce or in the production of

8

goods for commerce" within the applicable statutory definition, 29 U.S.C. § 203(s)(1).  As discussed above, plaintiff has sufficiently established that the Restaurant was his employer.  (See Am. Compl. ¶¶ 33-37.)  Accordingly, I find that the corporate defendant as well as the individual defendants should be held individually liable under the FLSA and NYLL.

B.  Damages

Once the court determines that the defaulting defendants are liable, "the court must conduct an inquiry to establish damages to a 'reasonable certainty.'"  Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)).  "[T]he quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation."  Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974).  "The burden is on the plaintiff to establish [his] entitlement to recovery."  Bravado Int'l Grp. Merch. Servs. v. Ninna, Inc., 655 F. Supp. 2d 177, 189 (E.D.N.Y. 2009).

Plaintiff requests damages in the total amount of $381,792.94 for unpaid overtime wages, spread of hours pay, liquidated damages, and pre-judgment interest.  (Pl.'s Mem. at 2; see also Damages Calculations, attached as Ex. 3 to the Declaration of Steven J. Moser, Esq., dated Nov. 19, 2021 ("Moser Decl."), Dkt. No. 18-7.)  I will address each in turn.

1.  Hours Worked

"As a preliminary matter, when an employer fails to maintain accurate records or where, as here, no records have been produced as a consequence of a defendant's default, courts have held that the 'plaintiff['s] recollection and estimates of hours worked are presumed to be correct.'"  Gunawan, 897 F. Supp. 2d at 88 (quoting Zeng Liu v. Jen Chu Fashion Corp., No. 00 CV 4221, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004)); see also Kim v. Kum Gang, Inc., No.

12 CV 6344, 2015 WL 2222438, at *25 (S.D.N.Y. Mar. 19, 2015) (where an employer fails to maintain records of wages and hours, plaintiffs "need only prove that they performed work for which they were not properly compensated and produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference") (internal quotation marks and citations omitted); Hart v. Rick's Cabaret Int'l, Inc., 60 F. Supp. 3d 447, 466 (S.D.N.Y. 2014) ("It would be manifestly unfair to allow employers to avoid, or reduce, their liability simply because they kept shoddy records."). Here, because defendants have defaulted and no employment records have been produced, the court will presume the accuracy of Marquez's recollection and estimates of hours worked.

2. Overtime Compensation

Plaintiff alleges that defendants willfully violated the FLSA and NYLL by failing to pay him overtime wages. (Am. Compl. ¶¶ 52-64; Marquez Decl. ¶¶ 7, 9-13.) Plaintiff is entitled to overtime compensation under the FLSA and NYLL at the rate of one and one-half times his regular rate of pay for the hours he worked in excess of forty during a workweek. See 29 U.S.C. § 207(a)(1); N.Y. COMP. CODES R. & REGS. ("N.Y.C.R.R.") tit. 12, § 142-2.2. "'[T]he regular rate refers to the hourly rate actually paid [to] the employee for the normal, non-overtime workweek for which he is employed.'" Hernandez v. NJK Contractors, Inc., No. 09 CV 4812, 2015 WL 1966355, at *41 (E.D.N.Y. May 1, 2015) (quoting Walling v. Youngerman Reynolds Hardwood Co., 325 U.S. 419, 424 (1945)). The method for calculating overtime is the same under both statutes, but a plaintiff may not receive double damages. See Martinez v. Alimentos Saludables Corp., No. 16 CV 1997, 2017 WL 5033650, at *15 (E.D.N.Y. Sept. 22, 2017). Because plaintiff's recovery will be greater under the NYLL, damages will be calculated based on his NYLL unpaid wages claim.

10

Plaintiff alleges that he consistently worked at least seventy-four  hours per week, and defendants never paid him overtime compensation.  (See Am. Compl. ¶¶ 43, 62- 63; Marquez Decl. ¶¶ 7, 9-13.)  To calculate the overtime compensation he is owed, the number of hours he worked over forty each week is multiplied by 150 percent of the higher of (i) his regular rate of pay, or (ii) the applicable minimum wage.  See Long Lin v. New Fresca Tortilla, Inc., No. 18 CV 3246, 2019 WL 3716199, at *3 (E.D.N.Y. May 1, 2019), report and recommendation adopted, 2019 WL 3714600 (E.D.N.Y. May 28, 2019).  This results in the amount of overtime compensation owed to plaintiff on a weekly basis.  To obtain the total overtime compensation owed for each time period, the weekly amount is multiplied by the number of weeks in that time period.

After reviewing plaintiff's overtime damages calculations, see Pl.'s Mem. at 7; Damages Calculations, I find that they are complete and accurate. Based on plaintiff's calculations and the chart below, I respectfully recommend that plaintiff be awarded $138,943.13 in unpaid overtime wages.

| Overtime Calculations | | | | | | |
|---|---|---|---|---|---|---|
| Time Period | Hours Worked | Hours Over | Regular Rate[3] | Weekly Overtime Due | Number of Weeks | Period Overtime Due |
| 04/19/2014 – 12/31/2014 | 74 | 34 | $11.88[4] | $605.63[5] | 36 | $21,802.50 |
| 01/31/2015 – 06/10/2018 | 74 | 34 | $13.13[6] | $669.38[7] | 175 | $117,140.63 |
| | | | | | **TOTAL**: | $138,943.13 |

     3.   <u>Spread of Hours</u>

     Plaintiff also seeks spread of hours pay under the NYLL.  (Am. Compl. ¶¶ 65-69.)

"The spread of hours is the length of the interval between the beginning and end of an

employee's workday."  N.Y.C.R.R. tit. 12, § 146-1.6(a).  "On each day on which the spread of

hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum

hourly rate."  <u>Id.</u>  Thus, for each day plaintiff worked a shift of more than ten hours, plaintiff is

entitled to an additional hour of pay at the minimum wage rate.  According to plaintiff, he

---

[3] As an employee of a restaurant, plaintiff is subject to New York's Hospitality Industry Wage Order ("Order").  <u>See generally</u> N.Y.C.R.R. tit. 12 § 146.  Under the Order, an "employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week."  <u>Id.</u> § 146-3.5(b); <u>see also</u> <u>Long Lin</u>, at *3.

[4] The regular rate of pay for the period of April 19, 2014 until December 31, 2014 was calculated as follows: $475/40 hours = $11.88.  (Pl.'s Mem. at 7; Damages Calculations.)

[5] The weekly overtime due for this period was calculated as follows: (($475/40 hours)*1.5) * 34 hours.  (Pl.'s Mem. at 7; Damages Calculations.)

[6] The regular rate of pay for the period of January 1, 2015 until June 10, 2018 was calculated as follows: $525/40 hours = $13.13.  (Pl.'s Mem. at 7; Damages Calculations.)

[7] The weekly overtime due for this period was calculated as follows: (($525/40 hours)*1.5) * 34 hours.  (Pl.'s Mem. at 7; Damages Calculations.)

worked shifts of more than ten hours every day he worked.  (Pl.'s Mem. at 7-8; Marquez Decl. ¶ 7.)  Thus, plaintiff worked a spread of hours exceeding ten hours six days each workweek for the entire period of his employment, minus the one week he took off for vacation each year.  (See Pl.'s Mem. at 8; Marquez Decl. ¶¶ 6-9; Damages Calculations.)  After reviewing plaintiff's calculations and supporting documentation, I find his calculations to be complete and accurate. As summarized in the below chart, I respectfully recommend plaintiff be awarded a total of $12,001.50 in spread of hours wages.

| Spread of Hours Calculations | | | | |
|---|---|---|---|---|
| Time Period | Days per Week That Exceeded 10 Hours | Min. Wage Rate | Number of Weeks Owed SOH Pay | Amount Due for Period |
| 04/19/2014 – 12/30/2014 | 6 | $8.00 | 31 | $1,488 |
| 12/31/2014 – 12/30/2015 | 6 | $8.75 | 51 | $2,677.50 |
| 12/31/2015 – 12/30/2016 | 6 | $9.00 | 51 | $2,754 |
| 12/31/2016 – 12/30/2017 | 6 | $11.00 | 51 | $3,366 |
| 12/31/2017 – 06/10/2018 | 6 | $13.00 | 22 | $1,716 |
| | | | **TOTAL**: | $12,001.50 |

4.  Liquidated Damages

Plaintiff additionally requests liquidated damages for his unpaid overtime wages and spread of hours under the NYLL.  (See Pl.'s Mem. at 9-10; Damages Calculations); see also Rana v. Islam, 887 F.3d 118, 119 (2d Cir. 2018) (noting that plaintiffs cannot recover cumulative liquidated damages under both the FLSA and NYLL for the same time period).  The NYLL allows plaintiffs to recover liquidated damages in the amount of 100 percent of overtime wages "unless the employer proves a good faith basis to believe that its underpayment of wages was in

compliance with the law." NYLL §§ 198(1-a), 663; see Garcia v. Giorgio's Brick Oven & Wine Bar, No. 11 CV 4689, 2012 WL 3339220, at *4 (S.D.N.Y. Aug. 15, 2012), report and recommendation adopted, 2012 WL 3893537 (S.D.N.Y. Sept. 7, 2012). The NYLL also authorizes liquidated damages for spread of hours claims. See, e.g., Hengjin Sun v. China 1221, Inc., No. 12 CV 7135, 2016 WL 1587242, at *4 (S.D.N.Y. Apr. 19, 2016).

Here, defendants have not answered or otherwise appeared in this action, much less demonstrated a "good faith" basis for believing the underpayment of wages was lawful. I accordingly recommend that plaintiff be awarded $150,944.63 in liquidated damages, which is the amount equal to his unpaid overtime and spread of hours pay.

5.   Wage Statements

Plaintiff also seeks $5,000 in statutory damages for defendants' failure to provide wage statements. New York's Wage Theft Prevention Act ("WPTA") requires employers "furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis[;] . . . deductions; allowances, if any, claimed as part of the minimum wage; and net wages." NYLL § 195(3). Plaintiff alleges that he never received such wage statements. (Marquez Decl. ¶ 14; Am. Compl. ¶¶ 70-72.) As of February 27, 2015, "an employee can recover $250 for each workday that a wage statement violation occurs or continues to occur, not to exceed $5,000." Pastor v. Alice Cleaners, Inc., No. 16 CV 7264, 2017 WL 5625556, *5 (S.D.N.Y. Nov. 21, 2017) (citing NYLL § 198(1–d)). Since plaintiff worked more than twenty days after that date, I find that he is entitled to $5,000 for wage statement violations.

14

6.   <u>Pre-judgment Interest</u>

Lastly, plaintiff requests pre-judgment interest. (Pl.'s Mem. at 10-11.)  A plaintiff

may recover both pre-judgment interest and liquidated damages under the NYLL because the

measures serve the two distinct purposes of "compensate[ing] a plaintiff for the loss of use of

money" and "a penalty," respectively.  <u>Reilly v. Natwest Mkts. Grp. Inc.</u>, 181 F.3d 253, 265 (2d

Cir. 1999) (citation omitted); <u>see also</u> <u>Villanueva v. 179 Third Ave. Rest. Inc.</u>, 500 F. Supp. 3d

219, 243 (S.D.N.Y. 2020).  The calculation of pre-judgment interest is based on unpaid wages,

not liquidated damages.  <u>Fermin</u>, 93 F. Supp. 3d at 49 (quoting <u>Mejia v. East Manor USA Inc.</u>,

No. 10 CV 4313, 2013 WL 3023505, at *8 n.11 (E.D.N.Y. Apr. 19, 2013), <u>report and</u>

<u>recommendation adopted</u>, 2013 WL 2152176 (E.D.N.Y. May 17, 2013)).  Nor is pre-judgment

interest calculated on statutory damages for failure to provide wage statements.  <u>See</u> <u>Feuer v.</u>

<u>Cornerstone Hotels Corp.</u>, No. 14 CV 5388, 2020 WL 401787, at *12 (E.D.N.Y. Jan. 21, 2020)

(citing <u>Gamero v. Koodo Sushi Corp.</u>, 272 F. Supp. 3d 481, 515 (S.D.N.Y. 2017), <u>aff'd</u>, 752 F.

App'x 33 (2d Cir. 2018)).

The statutory rate of interest is nine percent per annum.  N.Y. C.P.L.R. § 5004.

Where damages were incurred at various times, interest may be calculated from a single

reasonable intermediate date.  <u>Id.</u> § 5001(b).  The midpoint of a plaintiff's employment is a

reasonable intermediate date for purposes of calculating pre-judgment interest.  <u>See</u> <u>Fermin</u>, 93

F. Supp. 3d at 49; <u>Ying Ying Dai v. ABNS NY Inc.</u>, 490 F. Supp. 3d 645, 662 (E.D.N.Y. 2020).

I have determined that the midpoint of plaintiff's employment was May 14, 2016.

(<u>See</u> Marquez Decl. ¶¶ 2, 11-12; <u>see also</u> Damages Calculations.)  Accordingly, I respectfully

recommend that pre-judgment interest be awarded on plaintiff's unpaid wages of $150,944.63

from May 14, 2016 to the date of this court's judgment at a per diem interest rate of $37.22 ($150,944.63 x 0.09/365).

       7.   <u>Post-judgment Interest</u>

      Plaintiff is also entitled to post-judgment interest under 28 U.S.C. § 1961(a). Section 1961 provides that "interest shall be allowed on any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961(a).  Under the statute, interest is calculated "from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment."  <u>Id.</u>  Accordingly, I respectfully recommend that plaintiff be awarded statutory post-judgment interest.  <u>See Fermin</u>, 93 F. Supp 3d at 53 (finding that post-judgment interest is mandatory).

## C.  Attorney's Fees and Costs

      As the prevailing party, plaintiff is entitled to recover reasonable attorney's fees and costs under both the FLSA and the NYLL.  <u>See</u> 29 U.S.C. § 216(b), N.Y. Lab. Law §§ 198, 663(1).  Plaintiff seeks an award of $15,045 in attorney's fees and $965 in costs.  (<u>See</u> Pl's Mem. at 12.)

      District courts have "considerable discretion in determining what constitutes reasonable attorney's fees in a given case."  <u>Barfield v. New York City Health & Hosps. Corp.</u>, 537 F.3d 132, 151 (2d Cir. 2008).  When exercising their discretion to determine the reasonableness of attorney's fees, courts in this Circuit use the "presumptively reasonable fee" standard.  <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany</u>, 522 F.3d 183, 190 (2d Cir. 2008).  The presumptively reasonable fee, also known as the lodestar, is "the

product of a reasonable hourly rate and the reasonable number of hours required by the case."

Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011).

  As a threshold matter, the party seeking fees must provide accurate, detailed and

contemporaneous attorney time records.  See Scott v. City of New York, 643 F.3d 56, 58-59 (2d

Cir. 2011) (per curiam); Green v. City of New York, 403 F. App'x 626, 630 (2d Cir. 2010); N.Y.

State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983); In re

Phelan, 570 N.Y.S.2d 202, 203 (2d Dep't 1991).  Plaintiff has satisfied this requirement.  (See

Attorney Fees and Costs, attached as Ex. 4 to Moser Aff., Dkt. No. 18-8.)

  The court next assesses whether plaintiff's counsel requests a reasonable hourly

rate.  A reasonable hourly rate is "the rate a paying client would be willing to pay . . . bear[ing]

in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the

case effectively."  Arbor Hill, 522 F.3d at 190.  Reasonable hourly rates should be based on

"rates prevailing in the community for similar services of lawyers of reasonably comparable

skill, experience, and reputation."  Cruz v. Local Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d

Cir. 1994) (citing Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)).  A judge may determine

prevailing rates based on evidence presented or his or her own knowledge of rates charged in the

community.  Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1059 (2d Cir.

1989).  The "community" is generally considered to be the district where the court sits.  See

Arbor Hill, 522 F.3d at 190.  Further, "the nature of representation and type of work involved in

a case are critical ingredients in determining the 'reasonable' hourly rate."  Id. at 184 n.2

(citations omitted).

Plaintiff's counsel requests hourly rates of $450[8] for Steven John Moser and $75 for the paralegal.  (See Moser Decl. at ¶ 10; Attorney Fees and Costs.)  I find a rate of $450 per hour to be reasonable for Mr. Moser's work.  Mr. Moser is a partner with the Moser Law Firm, P.C., and has practiced for twenty-three years with a specialty in wage and hour litigation. (Moser Decl. ¶¶ 11-12.)  The rate of $450 per hour is commensurate with the rates routinely awarded in this district to attorneys with comparable backgrounds and experience.  See Martinez v. New 168 Supermarket LLC, No. 19 CV 4526, 2020 WL 5260579, at *8 (E.D.N.Y. Aug. 19, 2020) (noting that courts in this district typically award hourly rates ranging from $300 to $450 for partners, report and recommendation adopted, 2020 WL 5259056 (E.D.N.Y. Sept. 3, 2020); Thomas v. City of New York, No. 14 CV 7513, 2017 WL 6033532, at *5 (E.D.N.Y. Dec. 1, 2017) ("An hourly rate of $450 remains within the range of rates found reasonable for partners with twenty or more years of experience in this District.").  I also find the requested rate of $75 for the paralegal's work to be reasonable.  See, e.g., Martinez, 2020 WL 5260579, at *8 (noting that courts in this district routinely approve hourly rates of $70 to $100 for paralegals); Elvey v. Silver's Crust W. Indian Rest. & Grill, Inc., No. 18 CV 126, 2019 WL 3937126, at *15 (E.D.N.Y. July 3, 2019) (same).

The court next looks to the reasonableness of the hours billed.  To determine the reasonableness of the hours spent on the litigation, the court must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended."  Maldonado v. La Nueva Rampa, Inc., No. 10 CV 8195, 2012 WL 1669341, at *13 (S.D.N.Y. May 14, 2012) (quoting Lunday v. City of Albany, 42 F.3d

---

[8] There is a discrepancy in plaintiff's briefing regarding the hourly rate for Mr. Moser.  While the Moser Declaration seeks an hourly rate of $450, plaintiff's memorandum and billing records reference an hourly rate of $500.  (See Pl.'s Mem. at 14; Attorney Fees and Costs.)

131, 134 (2d Cir. 1994)).  The "critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'"  Id. (quoting Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992)).

   Here, plaintiff's counsel seeks compensation for 34.6 hours of work.  Of the total, Mr. Moser worked 29.3 hours and the paralegal worked 5.3 hours.  (See Attorney Fees and Costs.)  Having reviewed the submitted time records, I find the claimed number of hours reasonable.  See, e.g., Zhang v. Asian Moon Rest. Corp., 20 CV 2776, 2022 WL 1422576, at *9 (E.D.N.Y. Mar. 15, 2022) (finding 44.8 hours to be within the reasonable range for a single-plaintiff FLSA default case), report and recommendation adopted, 2022 WL 1460275 (E.D.N.Y. May 9, 2022); Ahn v. Sun Cleaners Inc., 19 CV 5919, 2022 WL 586022, at *12 (E.D.N.Y. Feb. 18, 2022) (finding 35 hours to be a reasonable amount billed in a single-plaintiff FLSA default case); Du v. CGS Metal Fabrication Inc., 19 CV 1821, 2022 WL 987316, at *13 (E.D.N.Y. Jan. 14, 2022) (finding 31.1 hours reasonable in a single-plaintiff FLSA default case); Said v. SBS Elecs., Inc., 08 CV 3067, 2010 WL 1265186, at *11 (E.D.N.Y. Feb. 24, 2010) (finding 41.35 a reasonable, though high, number of hours for a single-plaintiff FLSA default case), adopted as modified, 2010 WL 1287080 (E.D.N.Y. Mar. 31, 2010).  Accordingly, I respectfully recommend that plaintiff be awarded $13,582.50 in attorney's fees, consisting of $13,185 for Mr. Moser's fees ($450 × 29.3 hours) and $397.50 for the paralegal's fees ($75 × 5.3 hours).

   Plaintiff additionally requests compensation for $965 in costs, representing $402 for this court's filing fee, $470 in service of process fees, and $93 for photocopies.  (See Attorney Fees and Costs.)  "Ordinarily, plaintiffs may recover costs relating to filing fees, process servers, postage, and photocopying."  Pichardo v. El Mismo Rincon Latino Corp., No. 17 CV 7439, 2018 WL 4101844, at *11 (E.D.N.Y. Aug. 7, 2018) (quotations and citation

omitted), <u>report and recommendation adopted,</u> 2018 WL 4100480 (E.D.N.Y. Aug. 28, 2018); <u>see</u>

<u>also</u> <u>LeBlanc-Sternberg v. Fletcher</u>, 143 F.3d 748, 763 (2d Cir. 1998).  Plaintiff has submitted

sufficient documentary evidence for these costs.  (<u>See</u> Attorney Fees and Costs.)  Accordingly, I

find plaintiff's requested costs to be reasonable out-of-pocket expenses.

CONCLUSION

For the reasons set forth above, I respectfully recommend that plaintiff's motion be

granted and that default judgments be entered against all defendants, jointly and severally.

Regarding damages, I respectfully recommend that plaintiff be awarded a total of $306,889.26 as

follows: $150,944.63 in unpaid wages, $150,944.63 in liquidated damages, and $5,000 in

statutory damages.  I further recommend that pre-judgment interest be awarded on plaintiff's

unpaid wages of $150,944.63 from May 14, 2016 to the date of this court's judgment at a per

diem interest rate of $37.22.  I also recommend that post-judgment interest be awarded at the rate

set forth in 28 U.S.C. § 1961(a).  Finally, I recommend that plaintiff receive $13,582.50 in

attorney's fees and $965 in costs.

Plaintiff is directed to serve copies of this Report and Recommendation on

defendants by regular mail, and to file proof of service with the court within ten days of this

Report and Recommendation.  Any objections to this Report and Recommendation must be filed

electronically, with courtesy copies to Judge Gujarati and to my chambers, within fourteen days.

Failure to file objections within the specified time waives the right to appeal the district court's

order.  <u>See</u> 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

Respectfully submitted,


_____/s/_____
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
          August 05, 2022