# EXHIBIT A

# AFFIDAVIT OF JUGRAH KAUR WIFE OF KIRPAL SINGH

UNITED STATES DISTRICT COURT                    Case No. 20-CV-5855
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ESTEBAN MARQUEZ,
                        Plaintiff,

        Vs.
                                                **AFFIDAVIT OF JUGRAJ KAUR**

INDIAN TAJM INC.
d/b/a SANTOOR INDIAN RESTAURANT
BALVINDER SINGH, HARMINDER SINGH,
JOGINDER SINGH, KIRPAL SINGH, and
MEHANGA SINGH.
                        Defendants.
-------------------------------------------------------------x

JUGRAJ KAUR sworn or affirmed deposes and says:

1.  I Jugraj Kaur am the wife of Kirpal Singh the above captioned Defendant. My affidavit is
    also based on my personal knowledge.

2.  I am the one writing this affidavit because my husband had a massive stroke back in February
    2019 and is now disabled and unable to appear in this action.  As we have already made the
    Court aware he was diagnosed with cerebral infarction and vascular dementia and has
    multiple health problems.

3.  We recently had my husband examined by his neurological physician.  The reason we had
    this exam completed was to demonstrate clearly and unequivocally that my husband Kirpal
    Singh the defendant in this case is incapable of defending this action due to brain impairment.
    He is not able to process the many questions in a deposition and his memory is no longer
    intact.  His degree of impairment was also stated in the doctor's affirmation of Jacob
    Matthew, MD. This convinced the court to permit my husband to be assigned a Guardian Ad
    Litem Anthony J. Cassese, Esq. who is overseeing the work of Manuel Moses, Esq. my
    attorney in advocacy for my disabled husband.

4.  I have reviewed the affidavit of service in this case annexed to this affidavit.  It says that my

husband was served on May 18, 2021. This is impossible as my husband is in no condition to accept service of process. The address where he is alleged to have been served was 257-05 Union Turnpike Glen Oaks, New York which is the restaurant he formerly held an interest in, and his share was sold on September 8, 2020.

5.  I have a joint account with my husband. This account has been locked down, because of this judgment on default, and we are unable to get the funds from the account. This is how the lawsuit first came to my attention.

6.  Money going into the account included the following: I began to collect my social security in January 2014, my pension in July 2014. My husband began collecting social security in March 2010. My monthly pension $5000 and my social security is $2200 per month. And my husband's social security is $1200 per month. This money should be protected from any debt collection and so the bank restraint lifted immediately. It should be noted that I waive any potential conflict of interest in this case between me and my husband.

7.  Moreover, at this point my husband can no longer properly defend this action. He unable to even testify. Mr. Esteban Marquez has waited far too long in bringing this case. This has resulted in extreme prejudice to a defense of this matter. This judgment should be vacated and the case dismissed. If this Court will not decide in dismissal based on a failure to timely prosecute then I request that my attorney be allowed to file an answer on behalf of my husband.

**In Conclusion**: I request that the Court life the restraint; vacate the judgment; dismiss the case or in the alternative or if not allow Manuel Moses, Esq. to interpose an answer and defenses with the oversight of the G.A.L. Anthony Cassese and for any other relief this Court may deem to be just, fair, and proper.

I affirm this 18th day of July 2025, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

Jugraj Kaur
JUGRAJ KAUR

███████████████████████████████████

**143661**
**MOSER- STE**

Index No. **20-CV-5855**
File No.

| **DISTRICT** | COURT, COUNTY OF | **EASTERN NY** |

**ESTEBAN MARQUEZ**

Plaintiff(s)

against

**INDIAN TAJ, INC. D/B/A SANTOOR INDIAN RESTAURANT, BALVINDER SINGH, HARMINDER SINGH, JOGINDER SINGH, KIRPAL SINGH AND MEHANGA SINGH**

Defendant(s)

State of New York, County of Nassau                    SS:

**HUSAM AL-ATRASH** being duly sworn, deposes and says: that deponent is not a party to this action, is over 18 years of age and resides at **BROOKLYN        NY        11228**

That on **5/18/2021**        at        **12:00 n**        at        **PLACE OF BUS.**        at
**257-05 UNION TPKE**
**GLEN OAKS                NY                11004**
deponent served the within
**SUMMONS**
**FIRST AMENDED COMPLAINT**

on        **KIRPAL SINGH**
(Defendant/Respondent) herein known as Recipient

Said service was effected in the following manner;
**SUITABLE AGE PERSON**
by delivering a true copy of each to    **MS. JANE (REFUSED FULL NAME)**        **CO-WORKER**
a person of suitable age and discretion. Said premises is defendant's actual place of business-dwelling house usual place of abode within the state
**APPROXIMATE DESCRIPTION**

| SEX | FEMALE | COLOR | BROWN | HAIR | BLACK | HEIGHT | 5'3' | WEIGHT | 140 |
| AGE | 30 | OTHER | | | | | | | |

**MAILING**
        On        **5/21/2021** deponent mailed a copy of same  to respondent at
**257-05 UNION TPKE**
**GLEN OAKS                NY                11004**
by regular 1st class mail in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or action against the person.

**MILITARY CONFIRMATION**
I asked the person spoken to
**MS. JANE (REFUSED FULL NAME)**
whether recipient is in active military service of the United States in any capacity whatever.
Person answered in the negative.

Sworn to before me on

SHAUL HORAN
Notary Public, State of New York
No. 01HO6108246
Qualified in Nassau County
Commission Expires 04/12/2020

Brill Uri
Notary Public, State of New York
No. 01BR6394019
Qualified in Nassau County
Commission Expires 07/01/2023

**HUSAM AL-ATRASH**
**1279639**

ALERT PROCESS SERVICE AGENCY, 185 Willis Avenue, Mineola, NY 11501 (516) 741-4353

**Signature:** *Jugraj Kaur*
Jugraj Kaur (Jul 18, 2025 11:27 EDT)

**Email:** jkaur1948@gmail.com

# EXHIBIT A AFF. MS. KAUR

Final Audit Report                                                    2025-07-18

| | |
|---|---|
| Created: | 2025-07-18 |
| By: | Manuel Moses (jibaru@nyc.rr.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA73cRNpOY24dePBAERLqmMs1MApV7LH0X |

## "EXHIBIT A AFF. MS. KAUR" History

**Document created by Manuel Moses (jibaru@nyc.rr.com)**
2025-07-18 - 3:14:55 PM GMT- IP address: 68.174.157.177

**Document emailed to Jugraj Kaur (jkaur1948@gmail.com) for signature**
2025-07-18 - 3:14:58 PM GMT

**Email viewed by Jugraj Kaur (jkaur1948@gmail.com)**
2025-07-18 - 3:23:14 PM GMT- IP address: 64.233.172.204

**Document e-signed by Jugraj Kaur (jkaur1948@gmail.com)**
Signature Date: 2025-07-18 - 3:27:10 PM GMT - Time Source: server- IP address: 173.77.222.221

**Agreement completed.**
2025-07-18 - 3:27:10 PM GMT

**Adobe Acrobat Sign**

# **EXHIBIT B**

# **AFFIDAVIT OF JOHN GIANNITELLI**

UNITED STATES DISTRICT COURT     Case No. 20-CV-5855
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ESTEBAN MARQUEZ,
        Plaintiff,

  Vs.

            **AFFIDAVIT OF JOHN GIANNITELLI**

INDIAN TAJM INC.
d/b/a SANTOOR INDIAN RESTAURANT
BALVINDER SINGH, HARMINDER SINGH,
JOGINDER SINGH, KIRPAL SINGH, and
MEHANGA SINGH.
        Defendants.
-------------------------------------------------------------x

    JOHN GIANNITELLI sworn or affirmed deposes and says:

1. I John Giannitelli am the son-in-law of the above captioned Defendant. My affidavit is also based on my personal knowledge.

2. I am the one writing this affidavit because Mr. Kirpal Singh had a massive stroke back in February 2019 and is now disabled and unable to appear in this action. He is diagnosed with cerebral infarction and vascular dementia and has multiple health problems.

3. I have reviewed the affidavit of service in this case Annexed to Exhibit A, the affidavit of my mother-in-law. It says that my father-in-law was served on May 18, 2021. This is impossible as he was in no condition to accept service of process. The address where he is alleged to have been served was 257-05 Union Turnpike Glen Oaks, New York which is the restaurant he formerly held an interest in, and his share was sold on September 8, 2020. The documents attached show the sale of the restaurant and his interest accordingly. I was present at the closing which took place September 8, 2020, and I helped with the handover of the physical restaurant as well as the social media and merchant account information as my father-in-law was impaired. Annexed to my affidavit is The Agreement of Sale Sold by Kirpal Singh.

4.      Esteban Marquez waited years to act on this matter having served the wrong location. And this delay has seriously prejudiced against my father-in-law defending this case. Since selling the restaurant he has gotten progressively worse. In his current disabled condition this is particularly true. He would be unable to testify in his defense. Justice demands that this case be entirely dismissed or at least that the current bank restraint against my in-law's accounts be lifted as it is protected income for many years back and their lawyer Manuel Moses, Esq. be permitted to answer the complaint and defend the action.

        **In Conclusion**: I request that the judgment be vacated, the restraint on my mother in law and father in law's bank account be lifted, the matter be dismissed or in the alternative allowing our assigned lawyer to interpose an answer to the complaint and or make a further motion for it to be dismissed and for any other relief this Court may deem to be just, fair, and proper.

I affirm this 18th day of July 2025, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

_____

JOHN GIANNITELLI

# Exhibit B

# Agreement of Sale of Restaurant

# LAW OFFICES OF MANDEEP KAUR, P.C.

2518 East Tremont Avenue, Second Floor
Bronx, New York 10465
Phone (312) 691-3630
Facsimile (312) 691-3631
E-Mail: MANDEEP@MKLAWOFFICES.COM

July 13, 2020

**VIA EMAIL**

Carlose Law PLLC
1325 Franklin Ave, Suite 225
Garden City, NY 11530

      **Re:**    **Santoor Restaurant**
                 **257-05 Union Turnpike, Queens, NY**

To whom it may concern:

      In connection with the above-referenced transaction, enclosed please find one (1) fully executed duplicate originals of the Contract of Sale.

      Please note that the Purchasers' Contract Deposit check in the amount of $20,000.00 shall be duly deposited into this firm's IOLA Account at TD Bank, N.A., located in Bronx, New York. The receipt of said Contract Deposit is hereby confirmed subject to collection.

Should you have any questions or comments with regard to the above or the enclosed, please feel free to call the undersigned at your convenience. Thank you and I look forward to working with you.

           Very truly yours,

           Mandeep Kaur

## AGREEMENT OF SALE

AGREEMENT OF SALE made as of _July 13_, 2020, between Indian Taj Inc with an address at 257-05 Union Turnpike, Glen Oaks, New York 11004 ("Seller") and Centaur India Inc. with an address at _257-05 Union Turnpike, Glen Oaks, NY_ ("Purchaser")

1. **Agreement to Sell.** Seller agrees to sell, transfer and deliver to Purchaser, and Purchaser agrees to purchase, upon the terms and conditions hereinafter set forth, all of the assets (other than cash, certificates of deposit, securities, cash equivalents and accounts receivable) of the business located at 257-05 Union Turnpike, Glen Oaks, New York 11004 (the "Assets") , including without limitation the following:

   (a)  Inventory of any remaining merchandise, parts and supplies of the business in "as is" condition as of the date of this Agreement (the "Merchandise");
   (b)  Remaining equipment in "as is" condition as of the date of this Agreement (the "Equipment");
   (c)  Remaining furniture, fixtures and improvements in "as is" condition as of the date of this Agreement (the "Improvements");
   (d)  Existing leases for the website, ~~dishwasher, sanitizer, linen company and POS system~~ (the "Lease");
   (e)  Goodwill of the business (the "Goodwill");

2. **Purchase Price.** The purchase price to be paid by Purchaser is One Hundred Fifty Thousand ($150,000.00) dollars which shall be payable as follows (*It is understood and agreed by the parties that the price does not include the security deposits that the Seller currently has with the respective landlords*):

   (a)  $20,000.00 upon execution of this Agreement, and shall be subject to collection. The nonpayment of said check shall give Seller the right to declare this Agreement null and void, in addition to pursuing all other remedies against Purchaser on said check or as otherwise permitted by law. Said check is payable to the order of the Escrow Agent hereinafter identified and the proceeds of said check shall be held in escrows hereinafter provided.
   (b)  $130,000.00 in certified or bank check at Closing.
   (c)  The allocation of the purchase price shall be as follows:
   $_____  for Fixtures / Equipment
   $_____  for Goodwill
   $_____  for Restrictive Covenants
   $_____  for Leaseholds

3. **Acceptable Funds.** All money payable under this Agreement unless otherwise specified, shall be paid either: (a) in cash, but not more than $1,000.00 shall be paid in cash; (b) by good certified check of Purchaser, or official check of any bank, savings bank, trust company, or savings and loan association which is a member of the New York Clearing House, payable to the direct order of Seller; or (c) as otherwise agreed to in writing by the parties or their attorneys.

4. **The Closing.** The "Closing" means the settlement of the obligations of Seller and Purchaser to each other under this Agreement, including the payment of the purchase price to Seller as provided in Paragraph 2 hereof and the delivery of the closing documents provided for in Paragraph 5 hereof. The closing shall be held at the Law Offices of Mandeep Kaur, P.C., located at 3548 East Tremont Avenue, Second Floor, Bronx, New York 10465, ON OR BEFORE 20 DAYS FROM LEASE ASSIGNMENT / NEW LEASE APPROVAL by the Landlord, 255 MALL, LLC, with the Time Being of the Essence (the "Closing Date").

5. **Closing Documents.** At the closing Seller shall execute and deliver to Purchaser:

    (a)    Bill of Sale substantially in the form of Blumberg W81.

    (b)    Assignment of Lease

    (c)    Such other instruments as may be necessary or proper to transfer to Purchaser all other ownership interest in the assets to be transferred under this Agreement.

    (d)    A letter addressed to the Telephone Company authorizing the use of and transferring to the Purchaser of the telephone number (718) 343-3939;

    (e)    Corporate Resolution

6    <u>Closing Adjustments</u>. If applicable, the following items shall be apportioned as of midnight of the day preceding the closing date:

    (a)    Security Deposit, rent, including any additional rent, under the lease;

    (b)    Utilities – phone, electricity, gas, fuel, water & sewer, etc.

    Purchaser shall reimburse Seller for the amount of deposits with utility companies if transferred to Purchaser at the closing. Any errors or omissions in computing apportionments shall be corrected after the closing. This provision shall survive the closing.

7    <u>Sales Tax On Sale Of Business</u>. At the closing, Purchaser shall pay to Seller, in addition to the purchase price all sales taxes due to the State of New York and all local sales taxes on the portion of the purchase price allocated for any of the fixtures and equipment sold hereunder which are subject to New York or local sales tax. In the event that the State of New York or any local taxing authority shall appraise the fixtures and equipment subject to the sales tax in an amount in excess of the allocation made hereunder, Purchaser shall pay the additional sales tax thereon, and if Seller pays such excess sales tax, Purchaser promptly shall reimburse Seller any demand for such payment. This provision shall survive the closing.

8.    <u>Escrow for Creditors and Taxes</u>. In order to secure full performance of this Agreement by the Seller regarding any outstanding debts, claims, unpaid creditors and taxes, including any encumbrances or liens, the Seller shall deposit with its attorney the sum of <u>$1,500.00</u> to be held by said attorney for a period of sixty (60) days from the date of closing or until such time a notice of release from the Department of Taxation and Finance is received by the Purchaser's attorney, whichever is later. In the event of any dispute, Seller's attorney is authorized to deposit the escrowed sum into an applicable court and upon such deposit the obligation of the Escrowee shall thereby be discharged without any liability to either party. All reasonable costs, expenses and legal fees in connection with Escrowee's interplead actions in the event of dispute shall be charged against the escrowed funds and may be offset by the Escrowee before any deposit with the court.

9    <u>Representations and Warranties of Seller</u>. Seller represents to Purchaser to the best of their knowledge as follows:

    (a)    If Seller is a corporation, it is duly organized and validly existing under the laws of New York, and is duly qualified to do business in New York. Seller has full power and authority to conduct its business as now carried on, and to carry out and perform its undertakings and obligations as provided herein. The execution and delivery by Seller of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by the Board of Directors of Seller and will not conflict with or breach any provision of the Certificate of Incorporation or Bylaws of Seller

    (b)    No action, approval, consent or authorization of any governmental authority is necessary for Seller to consummate the transactions contemplated hereby.

    (c)    Seller is the owner of and has good and marketable title to the assets, free of all liens, claims and encumbrances, except as may be set forth herein.

    (d)    There are no violations of any law or governmental rule or regulation pending against Seller or the assets.

(e)      There are no judgments, liens, suits, actions or proceedings pending against Seller or the assets

(f)      Seller has not entered into, and the assets are not subject to, any (i) written contract or Agreement for the employment of any employee of the business, (ii) contract with any labor union or guild, (iii) pension, profit-sharing, retirement, bonus, insurance, or similar plan with respect to any employee of the business, or (iv) similar contract or Agreement affecting or relating to the assets

(g)      At the time of the closing, there will be no creditors of Seller

10.     <u>Representations and Warranties of Purchaser.</u> Purchaser represents and warrants to Seller as follows:

      (a)      Purchaser has full power and authority to carry out and perform her undertakings and obligations as provided herein.

      (b)      No action, approval, consent or authorization of any governmental authority is necessary for Purchaser to consummate the transactions contemplated hereby.

11.     <u>No Other Representations.</u> Purchaser acknowledges that neither Seller nor any representative or agent of Seller has made any representation or warranty (expressed or implied) regarding the Assets or the business, or any matter or thing affecting or relating to this Agreement, except as specifically set forth in this Agreement. Purchaser has inspected the Assets, Purchaser agrees to take the Assets "as is" and in their present condition, subject to reasonable use, wear, tear and deterioration between now and the closing date.

12.     <u>Conduct of the Business.</u> Seller, until the closing, shall:

      (a)      Conduct the business in the normal, useful and regular manner;

      (b)      Use its best efforts to preserve the business and the goodwill of the customers and suppliers of the business and others having relations with Seller; and

      (c)      Give Purchaser and its duly designated representative's reasonable access to Seller's premises, upon 48 hours advanced notice.

13.     <u>Income and Expenses Before and after the Closing.</u> Except as otherwise provided in this Agreement, Seller shall be liable for the payment of all bills for merchandise, goods and inventory delivered to the business before the closing; and Purchaser shall be liable for the payment of all bills for merchandise, goods and inventory delivered to the business after the date of the closing.

Seller shall be liable for the payment of all salaries, payroll deductions and taxes levied upon the employer in connection with the employee's work performed before the closing. Purchaser shall be responsible for the payment of all salaries, payroll deductions and taxes levied upon the employer in connection with the employees' work performed after the closing. The provisions of this Article shall survive the closing.

14.     <u>Conditions to Closing.</u> The obligations of the parties to close hereunder are subject to the following conditions:

      (a)      All of the terms, covenants and conditions to be complied with or performed by the other party under this Agreement on or before the closing shall have been complied with or performed in all material respects.

      (b)      All representations or warranties of the other party herein are true in all material respects as of the closing date.

      (c)      On the closing date, there shall be no liens or encumbrances against the Assets, except as may be provided for herein.

      (d)      Seller promptly shall notify the Landlord ("the Lessor") of the proposed assignment of the Lease and shall request the consent of the Lessor thereto. Purchaser shall furnish to the Lessor such information as may

reasonably be required in connection with the procuring of such consent and shall otherwise cooperate with the Lessor and with each other in an effort to expeditiously procure such consent. Neither Seller nor Purchaser shall be obligated to make any payment to obtain such consent. If the Lessor shall fail or refuse to grant such consent in writing on or before the closing date, or shall require as a condition of the granting of such consent that additional consideration be paid to the Lessor which neither Seller nor Purchaser is willing to pay, then either Seller or Purchaser may terminate this Agreement.

If this Agreement is terminated as provided above in this Article 14, Seller shall direct Escrow Agent to return, without interest, the down payment whereupon all rights of Purchaser hereunder shall terminate, and neither Seller nor Purchaser shall have any further claim against the other hereunder.

If Purchaser shall be entitled to decline to close the transactions contemplated by this Agreement, but Purchaser nevertheless shall elect to close, Purchaser shall be deemed to have waived all claims of any nature arising from the failure of Seller to comply with the conditions or other provisions of this Agreement of which Purchaser shall have actual knowledge at the closing.

15    Escrow Conditions. Concurrently with the execution of this Agreement, Purchaser has delivered to Mandeep Kaur, Esq. located at 3548 East Tremont Avenue, Second Floor, Bronx, New York 10465 ("Escrow Agent"), Purchaser's check in the amount of $20,000.00, being the amount to be paid by Purchaser upon the execution of this Agreement (the "Contract Deposit").

Escrow Agent shall hold the down payment in accordance with this Agreement, or a joint instruction; signed by Seller and Purchaser, or separate instructions of like tenor signed by Seller and Purchaser, or a final judgment of a court of competent jurisdiction. If Escrow Agent shall receive an instruction from Seller or Purchaser, Escrow Agent may act in accordance with such instruction if the other party shall fail to notify Escrow gent not to act in accordance with such instruction within ten days after delivery of such instruction by Escrow Agent to said other party.

Escrow Agent at any time may deposit the down payment and escrow amount with a court of competent jurisdiction and upon notice to Seller and Purchaser of such deposit Escrow Agent shall have no further responsibility or liability hereunder. Escrow Agent hereby is authorized and directed to deliver the down payment to Seller if, as and when title closes.

Seller and Purchaser acknowledge that Escrow Agent is merely a stakeholder, and that Escrow agent shall not be liable for any act or omission unless taken or suffered in bad faith, in willful disregard of this Agreement or involving gross negligence.

16    Liquidated Damages. If Purchaser defaults under this Agreement, the Seller shall be entitled to declare this Agreement null and void and retain the Contract deposit as liquidated damages.

17    Brokerage. The parties hereto represent and warrant to the other that they have not dealt with any broker or finder other than NONE in connection with this Agreement or the transactions contemplated hereby, and no broker or any other person is entitled to receive any brokerage commission, finder's fee or similar compensation in connection with this Agreement or the transactions contemplated hereby. Each of the parties shall indemnify and hold the other harmless from and against all liability, claim, loss, damage or expense, including reasonable attorneys' fees, pertaining to any broker, finder or other person with whom such party has dealt. The provisions of this Article 18 shall survive the closing. Seller agrees to pay the broker's commission pursuant to a separate Agreement.

18    Assignment. Purchaser shall not assign this agreement without the prior written consent of Seller in each instance. Any attempted assignment without Seller's consent shall be null and void.

19    Indemnification.

    (a)    The Buyer covenants and agrees to indemnify Seller and hold Seller harmless from, against and in respect of all obligations and liabilities related to the Business and accruing after the closing (either accrued, absolute, contingent or otherwise) and further to indemnify the Seller in respect of any and all actions, suits, proceedings, demands, assessments, judgments, costs and legal and other expenses incident to the foregoing.

    (b)    The seller covenants and agrees to indemnify Buyer and hold Buyer harmless from, against and in respect of all obligations and liabilities related to the Business and accruing before the closing (either accrued, absolute, contingent or otherwise), except as provided in Paragraph 18 hereunder.

    (c)    Notwithstanding any other provision of the Agreement, the provisions of this Paragraph 18 shall survive the closing for the duration of all statues of limitations relating to the claims and/or matters indemnified hereunder without the need for the execution of any subsequent instrument/s at closing.

20.    Notices. All notices, demands and other communications required or permitted to be given hereunder shall be in writing and shall be deemed to have been properly given if delivered via email and facsimile with confirmation. However, any default or mortgage extension requirements shall be delivered by hand or by registered or certified mail, return receipt requested, with postage prepaid, to Seller or Purchaser, as the case may be, at their addresses first above written, or at such other addresses as they may designate by notice given hereunder.

21.    Survival. None of the representations, warranties, covenants, or other obligations of Seller hereunder shall survive the losing, except as expressly provided herein and then only for a period of one year from the closing date; Acceptance of the Bill of Sale by Purchaser shall be deemed full and complete performance and discharge of every Agreement and obligation on the part of Seller hereunder, except those, if any, which expressly are stated herein to survive the closing, and then such survival shall be only for a period of one year.

22.    Entire Agreement. This Agreement contains all of terms agreed upon between Seller and Purchaser with respect to the subject matter hereof. This Agreement has been entered into after full investigation.

23.    Changes Must Be In Writing. This Agreement may not be altered, amended, changed, modified, waived or terminated in any respect or particular unless the same shall be in writing signed by the party to be bound.

25.    Securing Docs. In the event there is a loan from Seller, the Purchaser agrees to pay to the attorney for the Transferor, the sum of $ n/a on closing for the preparation of the Security Agreement, Collateral Assignment of Lease and UCC-1, which sum includes the filing fee.

24.    Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

25.    Binding Effect. This Agreement shall not be considered an offer or an acceptance of an offer by Seller, and shall not be binding upon Seller until executed and delivered by both Seller and Purchaser. Upon such execution and delivery, this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and permitted assigns.

INTENTIONALLY LEFT BLANK - SIGNATURE PAGE TO FOLLOW.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written

SELLER:                                          PURCHASER: KOLADY Ti J. ...

INDIAN TAJ, INC.                                 CENTAUR INDIA, INC.


MANDEEP KAUR, ESQ. hereby executes this agreement for the sole purpose of agreeing to serve as Escrow Agent in accordance with the provisions of Article 15 of this Agreement.

MANDEEP KAUR, ESQ.

# RIDER TO THE AGREEEMENT OF SALE

**Seller: Indian Taj, Inc**
**Purchaser: Centaur India Inc,**
**Business Location: DBA Santoor Indian Restaurant**
            **257-05 Union Turnpike, Glen Oaks, NY 11004**

1.  This Rider shall be an integral part of the Agreement of Sale signed by both parties. Should any provisions of this Rider conflict with the terms of the Agreement of Sale, the provisions of this Rider shall prevail.
2.  The sale of assets shall include the transfer and use of the DBA name Santoor Indian Restaurant. The Seller/Sellers' Attorney shall first relinquish the right of the use of this name with the appropriate regulatory bod and promptly notify the purchaser/Purchaser's Attorney of such relinquishment; and immediately thereafter, the Purchaser shall duly register for the use of the same such name.
3.  The assets if subject to any collateral shall be at the time of closing be cleared of any such liens, suits, claims, actions, or proceedings pending against the seller or the assets.
4.  The Purchaser shall NOT take the lease of existing POS system.
5.  The Purchaser shall consummate this transaction with the following **excluded** Liabilities that shall include, but not be limited to, the following:

(a)    Any Liability for (i) Taxes of Seller (or any stockholder or Affiliate of Seller) or relating to the Business, the Purchased Assets or the Assumed Liabilities for any Pre-Closing Tax Period; (ii) Taxes that are the responsibility of Seller or (iii) other Taxes of Seller (or any stockholder or Affiliate of Seller) of any kind or description (including any Liability for Taxes of Seller (or any stockholder or Affiliate of Seller) that becomes a Liability of Buyer under any common law doctrine of de facto merger or transferee or successor liability or otherwise by operation of contract or Law.

(b)    Any Liabilities relating to or arising out of the excluded assets.

(c)    Any Liabilities in respect of any pending or threatened Action arising out of, relating to or otherwise in respect of the operation of the Business or the Purchased Assets to the extent such Action relates to such operation on or prior to the Closing Date;

(d)    Any Liability or similar claim for injury to a Person or property which arises out of or is based upon any express or implied representation, warranty, agreement or guaranty made by Seller, or sold or any service performed by Seller.

(e)    Any Liabilities of Seller arising under or in connection with any Benefit Plan providing benefits to any present or former employee of Seller.

(f)    Any Liabilities of Seller for any present or former employees, officers, directors, retirees, independent contractors or consultants of Seller, including, without limitation, any Liabilities

associated with any claims for wages or other benefits, bonuses, accrued vacation, workers' compensation, severance, retention, termination or other payments.

(g)    Any Environmental Claims, or Liabilities under Environmental Laws, to the extent arising out of or relating to facts, circumstances or conditions existing on or prior to the Closing or otherwise to the extent arising out of any actions or omissions of Seller.

(h)    Any trade accounts payable of Seller (i) to the extent not accounted for on the Interim Balance Sheet; (ii) which constitute intercompany payables owing to Affiliates of Seller; (iii) which constitute debt, loans or credit facilities to financial institutions; or (iv) which did not arise in the ordinary course of business.

(i)    Any Liabilities of the Business relating or arising from unfulfilled commitments, quotations, purchase orders, customer orders or work orders that (i) do not constitute part of the Purchased Assets issued by the Business' customers to Seller on or before the Closing; (ii) did not arise in the ordinary course of business; or (iii) are not validly and effectively assigned to Buyer pursuant to this Agreement;

(J)    Any Liabilities to indemnify, reimburse or advance amounts to any present or former officer, director, employee, or agent of Seller including with respect to any breach of fiduciary obligations by same.

(k)    Any Liabilities under the excluded Contracts or any other Contracts (i) which are not validly and effectively assigned to Buyer pursuant to this Agreement; (ii) which do not conform to the representations and warranties with respect thereto contained in this Agreement; or (iii) to the extent such Liabilities arise out of or relate to a breach by Seller of such Contracts prior to Closing;

(l)    Any Liabilities associated with debt, loans or credit facilities of Seller and/or the Business owing to financial institutions; and

(M)    Any Liabilities arising out of, in respect of or in connection with the failure by Seller or any of its Affiliates to comply with any Law or Governmental Order

SELLER                                      PURCHASER

                                            Kolady T. Jose

_____                     _____
INDIAN TAJ, INC.                            CENTAUR INDIA, INC.

**Signature:** _John Giannitelli (Jul 18, 2025 11:24 EDT)_

**Email:** jgiannitelli@gmail.com

# EXHIBIT B. AFF. GIANNITELLI

Final Audit Report                                                                2025-07-18

| | |
|---|---|
| Created: | 2025-07-18 |
| By: | Manuel Moses (jibaru@nyc.rr.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAqlUE3dEvSlkk9NeGNVOymSw6GYARdVbz |

## "EXHIBIT B. AFF. GIANNITELLI" History

Document created by Manuel Moses (jibaru@nyc.rr.com)
2025-07-18 - 3:17:54 PM GMT- IP address: 68.174.157.177

Document emailed to John Giannitelli (jgiannitelli@gmail.com) for signature
2025-07-18 - 3:18:08 PM GMT

Email viewed by John Giannitelli (jgiannitelli@gmail.com)
2025-07-18 - 3:24:12 PM GMT- IP address: 104.28.39.136

Document e-signed by John Giannitelli (jgiannitelli@gmail.com)
Signature Date: 2025-07-18 - 3:24:43 PM GMT - Time Source: server- IP address: 104.28.39.134

Agreement completed.
2025-07-18 - 3:24:43 PM GMT

Adobe Acrobat Sign