# Law Office of Bhavleen Sabharwal, P.C.
261 Madison Avenue, Suite 1063
New York, NY 10016
Email: Bsabharwal@bsablaw.com
(917) 597-5984

October 24, 2025

<u>Via ECF:</u>

Honorable Diane Gujarati
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   Marquez v Indian Taj, Inc d/b/a Santoor Indian Restaurant, et al.
      Case No. 20-cv-5855(DG)(RML)

Dear Judge Gujarati:

I represent defendant Harminder Singh ("Harminder") in the above-referenced matter. I write in response to Plaintiff's letter motion (Dkt. 75) which requests reconsideration of the portion of the Memorandum and Order dated October 10, 2025 (Dkt.73) signed by Your Honor. The order adopted the factual determination in the Report and Recommendation dated August 11, 2025 from Magistrate Judge Levy (Dkt. 65), which held that Harminder was not an officer of Indian Taj, Inc. in May 2021 and thus vacated the judgment against him."

Plaintiff continues to fail to cite any case law which would stand for the proposition that Harminder's former place of business when he sold his shares on August 21, 2020, and where service was allegedly made on May 18, 2021 would be considered his "actual place of business" for purposes of N.Y. C.P.L.R § 308(2). In fact, during an evidentiary hearing on this matter, Your Honor even paused the evidentiary hearing to allow Plaintiff to find case law or any authority to support Plaintiff's position that an address on liquor license paperwork could be considered an individual's place of business for service purposes. Upon reconvening, Plaintiff was still unable to find case law on the issue of service. Thus, the Court granted Plaintiff the ability to re-serve Harminder based upon "equitable considerations" (Pg. 7 of Report and Recommendation of Hon. Gujarati) because Plaintiff could not cite to any authority.

## The October 10, 2025 Memorandum and Order

Respectfully, in allowing Plaintiff the opportunity to make another attempt to re-serve Harminder, the Memorandum and Order only took into account "equitable considerations" (pg. 7 of Dkt.73)

1

as they pertained to Plaintiff, but failed to acknowledge the inequity that resulted against Harminder in having his bank account assets frozen for an account he shares with his wife for almost a year (the account was frozen in December of 2024) while this litigation carried out. The first time Harminder learned of the lawsuit was when his bank account became frozen (*See* Affidavit of Harminder Singh Motion to Dismiss Dkt. 43). Harminder attests in his affidavit that he had relinquished his ownership of Santoor on August 21, 2020 (Shareholder Agreement as Dkt. 43) and it is clear that service upon Santoor was attempted almost nine months later on May 18, 2021. Harminder also produced evidence in the form of a 2014 Corporate Resolution that establishes that he had relinquished all decision-making authority to defendant Kirpal Singh in 2014 which is four years before Plaintiff stopped working for Santoor in 2018 as alleged in the complaint.

The record establishes that Plaintiff made ***only one attempt*** to serve Harminder Singh throughout the entire litigation (Dkt. 15-6). On May 18, 2021, the process server served a "co-worker" or "Ms. Jane" at the Santoor restaurant address located at 257-05 Union Turnpike, Glen Oaks, New York 11004 at 12:00 pm, and then mailed copies to Harminder Singh at the same address on May 21, 2021 (Dkt. 15-6). This single service attempt was followed by more than four years of inaction with respect to service before Harminder's bank account was frozen in December 2024[1]. Plaintiff relies heavily on the liquor license documents, but failed to examine the relationship Harminder had to Santoor when he signed a "Petition for Surrender of License" on July 16, 2021. Plaintiff uses public documents - without further inquiry- to argue that he relied on them based on Harminder's representation contained in them as being "President" but failed to exercise any due diligence in locating Harminder when there was a Voluntary Surrender of License form filed with the same liquor authority.

Plaintiff argues that Harminder failed to appear at the evidentiary hearing on October 7, 2025, but fails to consider the fact that he neglected to bring a process server to the evidentiary hearing, bring the "co-worker" who was allegedly served, or bring anyone who witnessed service actually being made at Santoor.

The Memorandum and Order also indicated that Harminder did "not attempt to conceal the defect in service". There is no evidence in the record that Harminder was attempting to evade service when he signed the liquor license paperwork. The August 21, 2020 Shareholders Agreement explicitly required that "Once assets are sold and taxes have been filed for 2018, 2019, 2020, Indian Taj, Inc. shall be dissolved immediately." This legal obligation created a framework requiring Harminder to complete various administrative tasks, including regulatory compliance with the New York State Liquor Authority. Harminder's January 28, 2021 signing of the late renewal application was necessary for regulatory compliance during the wind-down period. The application specifically stated: "DUE TO COVID-19 PANDEMIC, WE WERE CLOSED. NOW REOPENED IN EARLY JANUARY OF THIS YEAR AND NEED OUR LIQUOR LICENSE RENEWED PLEASE" (Dkt. 50). This language demonstrates that the business was attempting to

---

[1] Your Honor directed Plaintiff's counsel to serve a copy of the Court's September 27, 2022 Memorandum and Order regarding the default judgment upon Defendants (Dkt. 23). This appears to have been mailed to Harminder by Plaintiff's counsel's office on October 11, 2022 (Dkt. 25) and after this there is no activity on the docket until November 21, 2024 when each of the respective defense counsel's begin making motions to vacate the default judgplaintiff'sment.

maintain minimal regulatory compliance during the dissolution process, not evidence of Harminder's attempt to maintain operational control or evade service. This is clear from the surrender of the license that occurred in July of the same year.

If the laws on service applied how Plaintiff wanted them to, every document of public record could be used to determine someone's place of business for service purposes and there would be an endless stream of litigation. However, plaintiffs are expected to exercise due diligence in order to ascertain the identity of individuals they wish to pursue actions against. Plaintiff does not even attempt to hide the fact that he failed to exercise due diligence in service. In his original motion to oppose the vacating of the default, Plaintiff argued that "Locating assets to satisfy the judgment was a frustrating and painstaking process". Instead of discussing diligent attempts to secure service points blame to the number of individuals with the surname Singh (the surname 'Singh' is shared by more than 36 Million people worldwide and an estimated 150,000 men in the United States alone" (Pg. 3 Plaintiff's Memorandum in Opposition dated December 13, 2024 Dkt. 32). In Plaintiff's underlying motion for reconsideration Plaintiff claims he has made a *single* attempt at service to an address in Texas through a Lexis search and now argues there are 100 Harminder Singh's in Texas (Plaintiff's Letter Motion for Reconsideration Dkt. 75 pg. 4) making it difficult to locate Harminder. Notably, there is no affidavit from a process server or an investigator attached documenting the attempts at service, there is no assertion that Plaintiff attempted alternative methods of service, and there is no assertion that Plaintiff attempted to ascertain where Plaintiff worked.

### Plaintiff Should Not Be Permitted to Serve Counsel for Harminder

Based upon the applicable law, Plaintiff's argument for serving Harminder's attorney lacks valid grounds under the Federal Rule of Civil Procedure 4(2)(c) which authorizes service by " delivering a copy of each (the complaint) to an agent authorized by appointment or by law to receive service of process".

While the usual principles of agency apply in evaluating an attorney's authority to receive process, *Moore's Federal Practice, supra,* at 4–132; J. McLaughlin, *Practice Commentaries to* [CPLR § 303](#), C303:1 1984 (McKinney Supp.1984), a review of the cases reveals that, at least in New York, the courts are reluctant to lightly imply such an agency. In fact, in the majority of recent New York cases, the courts have declined to find that attorneys were impliedly appointed as agents for the service of process on their clients. *See, e.g.,* [Gibbs v. Hawaiian Eugenia Corp., 581 F.Supp. 1269 (S.D.N.Y.1984)](#) ("an attorney, solely by reason of his capacity as an attorney, does not thereby become his client's agent authorized by 'appointment ... to receive service of process) *Id* at 1271; *Al-Dohan v. Kouyoumjian,* 93 A.D.2d 714 N.Y.S.2d 2 (1st Dept. 1983) (transmittal of papers to counsel representing defendant did not serve as substitute for personal service absent any claim or proof that counsel had been designated as agent to receive process) *Id* at 715. [Charles H. Greenthal & Co. v. 301 East 21st St. Tenants' Ass'n, 457 N.Y.S.2d 826 (1st Dept.1983)](#) (Despite the conclusory assertion that the attorney representing the tenants' association agreed to accept service on behalf of the individual members of the association, assuming that such a representation had been made, the record is barren of any evidence sufficient to find that counsel was duly authorized by those tenants to act as their agent for the purpose of service, *Id* at 827.

3

The cases Plaintiff cites to stand for the proposition that service upon an attorney is proper are not dispositive. *Rampersad v. Deutsche Bank Sec. Inc.,* No. 02 CV 7311, 2003 U.S. Dist. LEXIS 7861, 2003 WL 21073951 makes no reference to service upon an attorney. *Federal Home Loan Mortg. Corp. v. Steinfeld,* No. 92 CV 761, 1992 U.S. Dist. LEXIS 20616, 1992 WL 428852 could not be found on Google or Westlaw. *Gonzalez v. United States*, No. 16 CV 1494 (KAM) (CLP), 2016 U.S. Dist. LEXIS 199037, at 13 (E.D.N.Y. Sep. 29, 2016) is a matter focused on subject matter jurisdiction challenges under Rules 12(b)(1) and 12(b)(2).

**Plaintiff Has Willfully Violated the Court's October 10, 2025 Order by Failing to Lift Asset Restraints**

The Court's October 10, 2025 Memorandum & Order contained an unambiguous directive that "any restraints on Defendant Harminder Singh's bank accounts or other assets resulting from the default judgment entered against him are lifted. Despite several follow-up attempts made regarding the status of lifting the accounts and even providing Plaintiff's counsel with the numbers to call to lift the restraints, Plaintiff has failed to and Harminder's bank account remains frozen.

**Plaintiff Should Not Be Permitted to Serve Harminder Singh and the Complaint Should Be Dismissed in Its Entirety**

Plaintiff's complete failure to make any service attempts during the October 2025 extension period, combined with the 4+ year gap in service efforts, demonstrates the fundamental lack of diligence that courts consistently reject under Rule 4(m). The strategic filing of a reconsideration letter just 3 days before the final deadline, without any accompanying service efforts, shows that Plaintiff seeks to avoid rather than cure the service deficiencies.

This pattern of neglect spanning over four years, culminating in strategic delay rather than diligent service efforts, warrants dismissal of the claims against Harminder Singh pursuant to Rule 4(m).

Thank you for Your Honor's consideration of this urgent matter.

    Respectfully submitted,

    *Bhavleen Sabharwal*
    Bhavleen Sabharwal
    Law Office of Bhavleen Sabharwal, P.C.
    Attorney for Defendant
    Harminder Singh
    261 Madison Avenue, Suite 1063
    New York, NY 10016
    Tel: (917) 597-5984
    Bsabharwal@bsablaw.com

CC: All counsel of record via ECF